**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

KELLY EDWARD DUNCAN,       :
AIS 269868,

                             :

       Petitioner,

                             :

vs.                                CA 13-0603-WS-C

                             :

KENNETH JONES,

                             :

       Respondent.


**REPORT AND RECOMMENDATION**

      Kelly Edward Duncan, a state prisoner presently in the custody of the

respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28

U.S.C. § 2254. This matter has been referred to the undersigned for the entry of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is

recommended that the instant petition be dismissed as time barred under the

Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision

contained in 28 U.S.C. § 2244(d). Alternatively, it is recommended that the Court find

that it is procedurally barred from reaching the merits of the sole claim raised by

Duncan herein.

**FINDINGS OF FACT**

      On September 17, 2009, Duncan was convicted of two counts of third-degree

burglary in the Circuit Court of Escambia County, Alabama. (*Compare* Doc. 3, at 2 *with*

Doc. 13, Exhibit F, Case Action Summary.) Petitioner was sentenced, on November 17,

2009 (*id.*), to consecutive 20-year terms of imprisonment, "split to serve 5 years in prison followed by 5 years of supervised probation." (Doc. 13, Exhibit C, at 1.)[1] Duncan directly appealed his convictions and sentences. (Doc. 13, Exhibit A.)

> Duncan asserts that the circuit court erred by: 1) denying his motion to suppress the shoes and evidence relating to the shoes; 2) denying his motion for mistrial based on an improper closing argument; and 3) denying Duncan's motion to exclude the shoes based on the State's failure to provide them to the defense.

(Doc. 13, Exhibit C, at 2-3.) The Alabama Court of Criminal Appeals affirmed petitioner's convictions and sentences by unpublished memorandum opinion released on October 29, 2010, *see Duncan v. State*, 92 So.3d 815 (Ala. Crim. App. Oct. 29, 2010) (table), and his application for rehearing was denied on January 7, 2011, *see Duncan v. State*, 97 So.3d 190 (Ala. Crim. App. Jan. 7, 2011) (table). By his own admission, Duncan did not seek discretionary review in the Alabama Supreme Court by filing a petition for writ of certiorari. (Doc. 3, at 3.)

Duncan collaterally attacked his convictions and sentences on January 25, 2012. (*See* Doc. 13, Exhibit F, at 1.) The issues raised in the Rule 32 collateral petition consisted of the following: (1) the prosecutor's remark regarding the defendant's failure to testify was prejudicial and warranted a new trial; (2) trial counsel was deficient in failing to request a continuance—when the court asked if he wanted a continuance—to have the defendant's shoes inspected by the Department of Forensic Sciences for the presence of oil; and (3) he was deprived of his Sixth Amendment right to a speedy trial. (Doc. 13, Exhibit F, STATEMENT OF THE FACTS AND CASE, at 4-15.) On June 12, 2012, the trial

---

[1]     Given the consecutive nature of his sentences, Duncan will serve 10 years in prison followed by 10 years of supervised probation. (*See id.*)

court denied Duncan's Rule 32 petition. (Doc. 13, Exhibit G.)

> [I]ssues one and two are precluded under 32.2(a)(1)(3)(5) of the <u>Alabama Rules of Criminal Procedure</u> in that they were raised or could have [been] addressed at trial or on appeal. In keeping with <u>Bishop v. State</u>, 656 So.2[]d 394 ([] Ala. Crim. App.) the Court finds that the Defendant has failed to show any prejudice suffered by either side from the delay of bringing this matter to trial and is of the opinion that the defendant contributed to the delay by being uncooperative. There being no additional evidence presented by the petitioner which would warrant any relief under Rule 32, the Court hereby **DENIES** said petition.

(*Id.*) By implicit admission, Duncan concedes that he did not appeal the denial of his collateral Rule 32 petition to Alabama's appellate courts. (*Compare* Doc. 3, at 4 *with id.* at 5; *see* Doc. 13, at 3 ("Duncan did not appeal from the denial of the petition.").)

Just prior to seeking federal habeas corpus relief (*see* Doc. 1, at 13 (petition filed December 2, 2013)), that is, on October 21, 2013, Duncan filed a petition for habeas corpus relief in the Circuit Court of Bullock County, Alabama (Doc. 13, Exhibit H); that petition appears to still be pending in Bullock County (*see* Doc. 13, at 3). In his § 2254 petition filed in this Court on December 3, 2013 (Doc. 1, at 13), Duncan raises the sole claim that he was denied his Sixth Amendment right to a speedy trial (*see* Doc. 3, at 7 & 20-22).

**CONCLUSIONS OF LAW**

A.    <u>**Statute of Limitations**</u>.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida*

*Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and, therefore, the timeliness of Duncan's petition must be calculated under § 2244(d)(1)(A) based upon the date on which his third-degree burglary convictions became final. "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000).

This rule from *Guenther* is obviously not applicable in this case since Duncan's convictions became final in 2011.

Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" On direct appeal, the Alabama Court of Criminal Appeals affirmed Duncan's convictions and sentences by unpublished memorandum decision released on October 29, 2010 (Doc. 13, Exhibit C) and overruled his application for rehearing on January 7, 2011 (Doc. 13, Exhibit D). Duncan did not petition for certiorari review in the Alabama Supreme Court[2] and, therefore, his third-degree burglary convictions became final on January 21, 2011, the end of his time for seeking discretionary review with the Alabama Supreme Court, Ala.R.App.P. 39(c)(2) ("The petition for the writ of certiorari shall be filed with the clerk of the Supreme Court pursuant to Rule 25(a), within 14 days (2 weeks) of the decision of the Court of Criminal Appeals on the application for rehearing[.]"). *See Gonzalez v. Thaler*, _____ U.S. _____, 132 S.Ct. 641, 646 & 656, 181 L.Ed.2d 619 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires. . . .

---

[2]     Duncan's failure to seek certiorari review in the Alabama Supreme Court prevented the court of last resort in Alabama from considering his direct appeal; therefore, the Supreme Court of the United States would have been unable to consider his case on direct review. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of 'the highest court of a State in which a decision could be had.' . . . A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States. . . . In the absence of a clear statutory or constitutional bar to higher state court review . . . the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for writ of certiorari.").

The intermediate state appellate court, the Texas Court of Appeals, affirmed Gonzalez's conviction on July 12, 2006. Gonzalez then allowed his time for seeking discretionary review with the Texas Court of Criminal Appeals []—the State's highest court for criminal appeals—to expire on August 11, 2006. . . . The Texas Court of Appeals issued its mandate on September 26, 2006. . . . We [] hold that, with respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review—here, August 11, 2006. We thus agree with the Court of Appeals that Gonzalez's federal habeas petition was time barred.").

Duncan's one-year period of limitations under AEDPA began to run on January 21, 2011 and expired on January 21, 2012. Petitioner is unable to take advantage of the tolling provision built into § 2244(d), 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"), because he admittedly did not file his Rule 32 petition collateral attack on his convictions until January 25, 2012 (*see* Doc. 3, at 3 (petitioner actually inserts the date January 26, 2012); *compare id. with* Doc. 13, Exhibit F, at 1 (docket sheet reflects petition was filed on January 25, 2012)), four days after his one-year limitation period expired. *See Pace v. DiGuglielmo,* 544 U.S.

408, 413, 125 S.Ct. 1807, 1811-1812, 161 L.Ed.2d 669 (2005) ("As in *Artuz*, we are guided by the 'common usage' and 'commo[n] underst[anding]' of the phrase 'properly filed.' In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exceptions. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay."). Accordingly, the only avenue by which this Court can consider the merits of Duncan's § 2254 petition is by finding that he is entitled to equitable tolling of AEDPA's one-year limitations period.

In *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at 645, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the*

*Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."). The Supreme Court in *Holland* indicated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence[,]" *id.* at 653, 130 S.Ct. at 2565, and gave the following guidance with respect to "extraordinary circumstances":

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at 651-652, 130 S.Ct. at 2564. It is also clear that a federal court can consider the merits of an untimely § 2254 motion if the petitioner establishes that he is factually innocent of the crimes for which he was convicted. *See San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied,* _____ U.S. _____, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

In this case, petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"). While petitioner does not directly argue that he was ignorant of the one-year limitations period, he does appear to suggest that his limited educational background and lack of a firm "grasp" of the law

makes him dependent on others for legal advice[3] and should, therefore, warrant application of equitable tolling. However, it is clear that a limited educational background and inability to "grasp" legal principles simply do not equate to circumstances sufficient to warrant equitable tolling of the one-year limitation period. *Terry v. Hurley,* 2014 WL 1660708, *2 (M.D. Ala. Mar. 10, 2014) ("[I]t is well settled that an inmate's lack of legal knowledge, the denial of access to a law library, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."); *see also Gardner v. Walker*, 2005 WL 1127137, *1 (M.D. Ga. May 7, 2005) ("'Ignorance of the law is no excuse; it is not a reason for equitable tolling.' . . . Here, Petitioner's Objection is without merit because his ignorance of AEDPA's limitations period fails to amount to 'extraordinary circumstance[s]' for equitable tolling purposes."); *see Teel v. Farrell*, 2006 WL 1148817, *4 (M.D. Ala. Apr. 28, 2006) ("[A]n inmate's status as a pro se litigant does not warrant equitable tolling.").

Petition next contends that equitable tolling is justified because he "suffers from serious mental disorders, and has been in treatment for such for the past 20[] years[.]" (Doc. 3, at 13; *see also id.* ("The petitioner is now [on December 30, 2013] and has been a live-in mental-health patient at the Bullock Corr. Fac.").) However, Duncan's argument

---

[3]     The undersigned parenthetically notes that "[a] petitioner has no right to legal assistance [whether from a lawyer or another inmate] in a habeas action and, thus, neither his perceived need to rely nor actual reliance on the assistance of an inmate clerk establishes extraordinary circumstances necessary to excuse the untimely filing of a petition." *Newman v. Hetzel,* 2012 WL 1900591, *9 (M.D. Ala. Apr. 30, 2012) (citations omitted), *report and recommendation adopted by* 2012 WL 1900571 (M.D. Ala. May 24, 2012).

in this regard need fail because he has presented not one whit of evidence creating "a factual issue as to a causal connection between his mental capacity and his ability to file a timely § 2254 petition." *Hunter v. Ferrell,* 587 F.3d 1304, 1308 (11th Cir. 2009); *compare id.* at 1308-1309 (petitioner submitted competency report which reflected he had irreversible mental retardation, etc., and the doctor's opinion that "ordinarily someone with Hunter's mental condition would not have sufficient understanding to be considered competent and that he only found Hunter competent because he was 'court wise' *and would have access to adequate legal counsel.*") *with Lawrence v. Florida,* 421 F.3d 1221, 1226-1227 (11th Cir. 2005) ("Lawrence admits in his appellate brief that medical reports state that his full scale IQ is 81, and he admits that he did not make the assertion that he was mentally incompetent per se. Instead, Lawrence claims that his initial pleading made it clear that he has suffered from mental impairments his entire life. However, this contention, without more, is insufficient to justify equitable tolling."), *aff'd,* 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007). In other words, in absence of a showing of a causal connection between mental incompetence and the failure to file a timely habeas corpus petition, as here, mere conclusory allegations of mental incompetency are not sufficient to justify equitable tolling. *Compare id. with Henschen v. Secretary, Florida Dept. of Corrections,* 2013 WL 6816093, *3 (N.D. Fla. Dec. 24, 2013) ("The petitioner must allege more than conclusory allegations . . ., and must 'show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition.'"); *Newman, supra,* at *8 ("A petitioner must make a threshold showing of incompetence . . ., and demonstrate that the alleged incompetence affected

his ability to file a timely petition. . . . Thus, the mere fact Newman complains he suffers from mental impairments, without more, is insufficient to justify equitable tolling."). Thus, petitioner's allegations regarding his "serious mental disorders" and mental-health treatment are insufficient to warrant equitable tolling; he has made no showing of mental incompetence and certainly demonstrated no causal connection between any alleged incompetence and his ability to file a timely § 2254 petition.

Duncan additionally contends that his confinement "in segregation for a part of the term," as well as limited access to a law library, warrant equitable tolling of the one-year limitation period. (Doc. 3, at 12.) These conclusory and bare allegations are insufficient to warrant equitable tolling of the one-year limitation period in absence of a supportable allegation regarding how the lack of access to a law library while in segregation and any limited access to the law library for the remaining portion of his one-year term thwarted his efforts to file a timely petition. *Compare Carter v. Price,* 2014 WL 1017663, *3 (M.D. Ala. Mar. 14, 2014) ("[C]ursory assertions regarding the inadequacy of, or lack of access to, the prison law library are insufficient to warrant equitable tolling of the statute of limitations."); *McKenzie v. United States,* 2009 WL 3836450, *5 (S.D. Fla. Nov. 16, 2009) ("The movant's conclusory allegations regarding insufficient access to a law library do not justify equitable tolling.") and *Paulcin v. McDonough,* 259 Fed.Appx. 211, 213 (11th Cir. Dec. 13, 2007) ("Paulcin asserted only the conclusory allegation that he was denied access to the [law] library and his records, but failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding."), *cert. denied,* 555 U.S. 1086, 129 S.Ct. 776, 172 L.Ed.2d 756

(2008), *with Miller v. Florida,* 307 Fed.Appx. 366, 368 (11th Cir. 2009) ("[E]ven restricted access to a law library, lock-downs, and solitary confinement do not qualify as [] circumstances warranting equitable tolling.") and *Cutts v. Jones,* 2009 WL 230091, *7 (M.D. Ala. Jan. 30, 2009) ("[N]either an alleged inadequate prison law library nor limited access thereto establishes extraordinary circumstances warranting equitable tolling of the limitation period.").[4]

Finally, Duncan appears to argue that the one-year limitation period should be equitably tolled in light of his actual innocence of both counts of third-degree burglary; however, the undersigned finds this argument unpersuasive. In *McQuiggin v. Perkins,* __ U.S. ____, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." However, the Supreme Court also notably cautioned that "tenable actual-innocence gateway pleas are *rare*[.]" *Id.* (emphasis supplied). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.,* quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). Here, Duncan does not rely upon any of the examples of "new evidence" set forth in *Schlup,* 513 U.S.

---

[4]        The three events referenced in petitioner's response to the undersigned's show cause order which he claims also prevented him from timely filing his federal petition (*compare* Doc. 16, at 14-15 *with id.* at 13-14), simply did not prevent such timely filing of his federal attack on his convictions and sentences inasmuch as all those events, by petitioner's admission, occurred in or after June of 2012 (*see id.*), approximately sixteen (16) months after petitioner's one-year limitation period expired on January 21, 2011.

at 324, 115 S.Ct. at 865 ("exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence") and, therefore, his argument cannot get off the ground. Instead, he wants this Court to find his actual innocence based upon a clear mistake made by the jury on the verdict forms which came to light upon the reading of the first verdict form (*see* Doc. 15, T.T. 392-393).

> THE COURT:     You all may be seated. Ladies and gentlemen, have you reached a verdict?

> MR. CARVER:     We have, Your Honor.

> THE COURT:     And would you hand the verdict to the bailiff, please sir. Both papers.

> (verdicts handed to bailiff and then to the Court)

> THE COURT:     I'll ask the defendant and counsel to stand. On count one, we, the jury, find the defendant not guilty of burglary in the third degree.

> UNIDENTIFIED JURORS:     No. No.

> MR. CARVER: No. Guilty, Your Honor.

> THE COURT:     I have been handed a form.

> MR. CARVER:     I'm sorry. I'm sorry.

> THE COURT:     What I'm going to do is, at this point[,] ask the jury to immediately be returned to the jury room with the verdict forms. And if there's been any kind of confusion in reference to the particular papers, ask you to again reexamine, talk among yourselves, make absolutely certain. And then when you are ready just knock on the door and let the bailiff know.

> And Mr. Bailiff, I'm going to hand these forms to you. And I'm going to, again, just let the jury go back to the jury room and let you all examine the proper paperwork and then . . . when you're ready, knock on the door and then we'll call for you again.

(*Id.*) Certainly, the reactions of numerous unidentified jurors, along with the reaction of the foreman of the jury, can leave little doubt that the jurors believed Duncan was factually guilty (not innocent) of third-degree burglary. Moreover, there is no question that the trial court acted properly in directing the jury back to the jury room—as the verdicts had not been accepted by the court and the jury had not been discharged—for further deliberations and to correct/change any mistake in its verdict(s). *Ex parte Lamb,* 113 So.3d 686, 689 & 690 (Ala. 2011) ("'Until a jury has been discharged, it is within the power of the trial court to direct it to correct its verdict so as to make it appear in proper form.' . . . Undertaking to change a jury's verdict, whether in written or oral form, is unavoidably a substantial change, not a mere correction of a clerical mistake, and such a change should have been noticed, altered, and entered on the record before the jury was discharged, the moment that 'ends [its] consideration of the case.'" (citations omitted)); *compare id. with Helms v. United States,* 310 F.2d 236, 240 (5th Cir. 1962) ("It seems to be settled in the federal courts that in the case of an inadvertent mistake the court had the power before finally accepting the verdict and discharging the jury to permit the jury to correct the mistake, as was done in this case.")[5]; and *Braxton v. McDonough,* 2007 WL 1017675, *5 (M.D. Fla. Mar. 30, 2007) ("It is [] well settled in the federal courts that in the case of an inadvertent mistake, the court has the authority, before accepting the verdict and discharging the jury, to permit the jury to correct the mistake. . . . A verdict is not final until the jury's deliberations are completed, the result is announced in open court, and no dissent by a juror is registered."). Because the conduct of the trial judge in this

---

[5]    The situation in *Helms* is all but identical to what happened in this case. *See id.* at 239-240.

case was proper under Alabama and federal law, Duncan's "actual innocence" argument fails and this Court must find his federal habeas petition decidedly time-barred. *Cf. Justo v. Culliver*, 317 Fed.Appx. 878, 881 (11th Cir. 2008) ("Justo fails to show actual innocence to the offense to which he pleaded guilty. No error has been shown in the dismissal of Justo's habeas petition as time-barred.").

**B.** **Procedural Default Doctrine**.

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal

court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .    .    .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and

adequate state ground doctrine ensures that the States' interest in
correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

In the habeas context, federal courts are to "presume that there is no independent
and adequate state ground for a state court decision when the decision 'fairly appears to
rest primarily on federal law, or to be interwoven with the federal law, and when the
adequacy and independence of any possible state law ground is not clear from the face
of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032,
1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S.
255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not
bar consideration of a federal claim on either direct or habeas review unless the last
state court rendering a judgment in the case 'clearly and expressly' states that its
judgment rests on a state procedural bar."). In all other cases, the presumption is not
applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288,
109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed*
presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at
299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court
has had the opportunity to address a claim that is later raised in a federal habeas
proceeding."). Moreover, the presumption "looks through" unexplained orders to the
last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115
L.Ed.2d 706 (1991).

Where there has been one reasoned state judgment rejecting a federal
claim, later unexplained orders upholding that judgment or rejecting the
same claim rest upon the same ground. If an earlier opinion "fairly

> appear[s] to rest primarily upon federal law," *Coleman,*[___ U.S., at ___, 111 S.Ct., at 2559], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense

impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In his answer, respondent asserts that petitioner's Sixth Amendment claim (of denial of a speedy trial) is procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's admitted failure to raise this claim in Alabama's appellate courts (*see* Doc. 3, at 4 & 5).

It is clear to the undersigned that Duncan has procedurally defaulted his Sixth Amendment claim based upon the reason previously identified. More specifically, petitioner did not raise this claim on appeal to Alabama's appellate courts following the trial court's June 12, 2012 denial of his Rule 32 petition. *Cf. Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("[T]here is no doubt that Alabama's discretionary review

procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002). Thus, this Court is procedurally barred from reaching the merits of this claim pursuant to *Boerckel, supra*, 526 U.S. at 848, 119 S.Ct. at 1734 (a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has not properly presented unless claims and, therefore, has procedurally defaulted same), unless petitioner can establish that either the cause and prejudice or fundamental miscarriage of justice exception is applicable to his case, *Smith, supra,* 256 F.3d at 1138.

In response to this Court's show cause order, petitioner seems to suggest that since he is "cognitively challenged" and suffers from mental illness, his default of this claim should be excused. (*See* Doc. 16, at 7.) In addition, Duncan also appears to suggest that his lack of "even rudimentary literacy skills," ignorance of the law, and dependence on others for legal assistance (including, "'jailhouse lawyers'") should excuse his default of this claim. (*See id.* at 12.) More specifically, petitioner claims that three different events "out of his control" caused him to be unable to appeal the June 2012 denial of his Rule 32 petition by the Circuit Court of Escambia County, Alabama, namely: "(1) the jailhouse lawyer who prepared [his] Rule 32 petition . . . [was] transferred to another institution and thereby [he] had no legal assistance whatsoever[;] (2) in that period of time also, a tornado struck north Alabama and Limestone Corr. Facility doing serious damage and ruining the building which housed the law library. The institution was totally without law library access for over 6 months. This can be corroborated by Ala. Dept. of Corr. records[; and] (3) during and subsequent to these

events, [he] was again confined for mental-health treatment, ultimately to be sent to Bullock Corr. Fac. for in-patient residential mental-health treatment. It is a fact that this is the reason why the petitioner was not able to raise a claim in the Ala. Court of Crim. App. appealing the Rule 32 petition being denied." (Doc. 16, at 13-14.)

It is clear that Duncan's lack of even rudimentary literacy skills, ignorance of the law, and alleged need to depend on others for legal assistance do not constitute cause to excuse the procedural default in this case inasmuch as "neither an inmate's lack of legal knowledge, his failure to understand legal principles nor . . . ignorance of the law . . . establish cause for a procedural default[,]" *Smith v. Holt,* 2008 WL 1929905, *20 (M.D. Ala. Apr. 29, 2008) (numerous citations omitted), and there is no right to legal representation in collateral actions, *see Whiddon v. Dugger,* 894 F.2d 1266, 1267 (11th Cir.) ("Because there is no right to legal counsel in collateral proceedings, . . . poor advice about such proceedings from a state-provided lawyer or inmate law clerks will not establish petitioner's claim of 'cause.'"), *cert. denied,* 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). In addition, in light of this latter legal principle, Duncan cannot be heard to argue that the transfer of his "jailhouse lawyer" constitutes cause for his default of this claim. *Cf. Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) ("The fact that an inmate law clerk was assisting in drafting the state petition does not relieve [petitioner] from the personal responsibility of complying with the law."), *cert. denied,* 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001).

As for Duncan's alleged "cognitive" deficits, mental illness, and confinement in Bullock Correctional Facility for mental-health treatment, petitioner offers only

conclusory allegations, as opposed evidence establishing that his mental conditions and treatment program "rendered him unable to properly exhaust his state court remedies during the relevant time period[;]" therefore, petitioner's "mental health conditions [and treatment] fail to establish cause for his procedural default[]." *Thomas v. Alabama*, 2011 WL 294223, *14 (M.D. Ala. Jan. 7, 2011) (citations omitted), *report and recommendation adopted by* 2011 WL 288732 (M.D. Ala. Jan. 27, 2011); *see also Smith, supra*, at *20 ("To the extent the petition can be construed to assert that Smith's mental health issues constitute cause for his defaults, Smith is entitled to no relief as he has failed to establish a causal connection between his alleged mental health issues and his ability to file appropriate collateral actions in the state courts."); *cf. Farabee v. Johnson*, 129 Fed.Appx. 799, 804 (4th Cir. 2005) (petitioner presented no evidence demonstrating "his mental illness interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation" and, therefore, he failed to establish "that any mental illness actually caused his several procedural defaults[]"); *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) ("Our cases establish that, in order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief.").

This leaves the Court with petitioner's argument that the tornado which struck Limestone Correctional Facility in 2012 left the prison without a law library for six months and such event constitutes cause for his procedural default. There can be little

question that a tornado did indeed strike Limestone Correctional Facility on March 2, 2012. http://blog.al.com/breaking/2012/03/limestone_correctional_facility (last visited May 6, 2014). However, even assuming that Limestone's law library could not be accessed by prisoners for six months, petitioner's argument in this regard founders for two reasons. First, Duncan's "third event" cause argument calls into question the tornado argument inasmuch as he explicitly states that this "third" argument—being confined for mental-health treatment and ultimately being sent to Bullock for in-patient residential mental health treatment—"is the reason why the petitioner was not able to raise a claim in that Ala. Court of Crim. App. appealing the Rule 32 petition being denied." (Doc. 16, at 14.) Thus, if the petitioner's receipt of intensive mental health treatment at Bullock is the "real" reason for his procedural default, his inability to access the law library at Limestone obviously cannot serve as a reason for his default of the claim he seeks to raise in this Court.[6] More importantly, "[c]ourts have held that a *habeas* petitioner's lack of access to the law library can constitute 'cause' only where the lack of access is extraordinary ***and*** only where the petitioner specifies what materials he needed but could not get because of the lack of access to a law library." *Martin v. Alabama*, 2013 WL 6583947, *5 (N.D. Ala. Dec. 16, 2013) (some emphasis in original; other emphasis added). Not only has Duncan failed to specify what materials he needed to appeal the trial court's denial of his Rule 32 petition but could not get because of the lack of access to a law library, he has failed to point to any attempts he made to contact

---

[6] This Court has been provided with no information regarding the period of time Duncan was incarcerated at Limestone and when he was transferred to Bullock, the site of his present incarceration.

the Alabama Court of Criminal Appeals and seek additional time to pursue an appeal in light of the post-tornado condition of Limestone Correctional Facility. Accordingly, Duncan's generic argument in this regard does not establish cause to excuse his procedural default in this case, that is, his failure to raise his Sixth Amendment claim (of denial of a speedy trial ) to Alabama's appellate courts.

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Duncan to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). As previously indicated, Duncan has not come forward with any new reliable evidence which establishes his actual innocence of the two counts of third-degree burglary for which he was convicted in the Circuit Court of Escambia County, Alabama on September 17, 2009. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

    **C.**     <u>**Certificate of Appealability**</u>.

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether   (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.""). Inasmuch as equitable tolling is an extraordinary remedy which the Eleventh Circuit has rarely granted, *see Diaz, supra*, 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and petitioner has defaulted the claim he wishes this Court to address pursuant to *O'Sullivan v.*

*Boerckel, supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Duncan should be allowed to proceed further, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report & recommendation adopted by* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## <u>CONCLUSION</u>

The Magistrate Judge recommends that Kelly Edward Duncan's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under § 2244(d). Alternatively, petitioner is not entitled to any relief in this Court because he

has procedurally defaulted his speedy trial claim pursuant to *O'Sullivan v. Boerckel*. Duncan is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal in forma pauperis.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 9th day of May, 2014.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**